UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:11-cr-00501 |
| Plaintiff, | ORDER |
| | [Resolving Doc. 157] |
| v. | |
| ISIAH TAYLOR, III, | |
| Defendant. | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In 2012, a jury found Isiah Taylor guilty of five counts related to Taylor's leadership role in 45 armed robberies.[1] One count for brandishing a gun carried a mandatory, consecutive, seven-year sentence.[2] For the four other robbery counts, the sentencing guidelines recommended 360-months-to-life incarceration.[3] The Court sentenced Taylor to 126 months for the four robbery counts, plus the seven-year minimum for brandishing a gun, totaling 210 months' incarceration.[4]

Now, Taylor asks the Court for a second time for compassionate release. But because Taylor does not qualify for compassionate release, the Court **DENIES** Taylor's motion.

### I. Compassionate Release

To qualify for compassionate release, an inmate must show that there are extraordinary-and-compelling reasons for early release. Further, the statutory sentencing factors must weigh in favor of shortening incarceration.[5] Here, the sentencing factors weigh

---

[1] Presentence Investigation Report ¶¶ 1, 9–64 (court copy).
[2] *See* 18 U.S.C. § 924(c)(1)(A)(ii).
[3] *Id.* at ¶ 380.
[4] Doc. 70.
[5] 18 U.S.C. § 3852(c)(1)(A); 18 U.S.C. § 3553(a).

heavily against shortening Taylor's prison term. And Taylor gives no evidence of extraordinary-and-compelling reasons for early release.

### A. Statutory Sentencing Factors

*Offense's Nature & Circumstances.* Taylor's serious offense counsels against any early release. Taylor played leadership role in an armed-robbery conspiracy. The conspiracy terrorized Northeast Ohio businesses for three years, committing 45 total robberies.[6]

Taylor and his coconspirators used sophisticated methods to rob without being identified or captured. At Taylor's instruction, one of the coconspirators would steal a vehicle or bicycle to use during the robbery and then abandon the vehicle after completing the crime. Taylor also provided his coconspirators with two-way radios, police scanners, ski masks, gloves, and dark clothing.[7]

The robberies typically involved brandishing a firearm or simulated firearm and threatening to shoot the victims.[8] Sometimes, assailants used physical force by grabbing or striking the victims.[9] During several robberies, assailants tied up or pepper-sprayed the victims.[10]

Trial testimony showed that the robberies profoundly impacted victims. One victim testified that during a robbery she felt "scared" and "wonder[ed] what the last thing [she had] said to [her] kids was."[11] Other victims described similar experiences.[12] And post-trial victim-

---

[6] Presentence Investigation Report ¶¶ 9–65 (court copy).
[7] *Id.* ¶ 2.
[8] *E.g., id.* ¶¶ 60, 64.
[9] *See id.* ¶ 41.
[10] *E.g., id.* ¶¶ 26–27, 30.
[11] Doc. 88 at 77 (PageID 553).
[12] *Id.* at 51–52 (PageID 527–28) ("[A]t the moment I was like, 'This is crazy.' ... It was an eerie feeling."); *id.* at 68–69 (PageID 544–45) ("I was stunned ... my heartbeats were high ... . He could have shot me.").

Case No. 4:11-cr-00501
GWIN, J.

impact statements further showed that victims suffered "emotional and mental problems, paranoia, and physical injuries" resulting from the robberies.[13]

*Guidelines Range & Avoiding Disparities.*  Based on the offense and Taylor's criminal history, the sentencing guidelines suggested 360-months-to-life incarceration, to be followed by the seven-year mandatory-minimum sentence for brandishing a gun.

At sentencing, this Court considered Taylor's codefendants' sentences to ensure that Taylor's sentence proportionately reflected Taylor's greater culpability as the conspiracy's leader.[14]  The Court ultimately imposed a 126-month sentence—a 65% downward variance from the guidelines range.  So, no unwarranted disparity supports Taylor's early release.

*Personal History & Characteristics.*  Although Taylor's criminal history shows only two adult convictions, both convictions involved violent crimes.  In 1988, Taylor was convicted in Ohio of voluntary manslaughter and served six years in prison.[15]  In 2001, Taylor was convicted in Pennsylvania of a violent-robbery conspiracy similar to the offense in this case.  Troublingly, Taylor committed the crimes in this case while still on parole for the Pennsylvania case.[16]

Taylor's minimal efforts towards reform while incarcerated likewise counsel against any early release.  In over ten years in prison, Taylor has completed only five educational courses—and only one course since 2016.[17]  Although Taylor gives evidence that he has authored a book about domestic abuse and secured a publishing deal, authorship does not inherently indicate rehabilitation.  Further, Taylor's attempts to minimize the offense suggest

---

[13] Presentence Investigation Report at ¶ 65 (court copy).
[14] Doc. 87 at 33 (PageID 471).
[15] *Id.* ¶ 386.
[16] *Id.* ¶ 387.
[17] Doc. 157-1.

Case No. 4:11-cr-00501
GWIN, J.

Taylor remains unrepentant for the psychological and physical harm the robberies inflicted on the victims.[18]

Little in the record reduces Taylor's culpability for the offense. Certainly, Taylor's childhood appears to have been difficult. Taylor's parents divorced when Taylor was four. From then on, Taylor lacked a stable living environment and experienced stretches of homelessness.[19]

Still, Taylor has no documented mental-health issues or substance-dependency issues and has completed high school and some college.[20] Further, Taylor has lawful skills and worked as a truck driver and forklift operator during the same period as the robberies.[21] So, Taylor's criminal activity did not result from any inability to lawfully make money.

*Penological Justifications*. Taylor's sentence appropriately reflects just punishment for Taylor's offense's seriousness and the offense's impact on the victims.

Plus, early release would neither deter any recidivism nor adequately protect the public. Taylor's career-offender status and the offense's violent nature suggest a substantial recidivism risk. Although recidivism risk decreases with age, recent data shows 58.2% of violent career offenders aged 50 to 59 when released are rearrested.[22]

B. **Extraordinary-and-Compelling Reasons**

Even if the statutory sentencing factors qualified Taylor for early release, Taylor gives no extraordinary-and-compelling reasons for early release.

---

[18] Doc. 159 at 5 (PageID 2615) ("The conduct of the defendant as well as the co-defendants do not rise to the level of being a danger to the community when view'd[sic] in light of other defendants this court and other courts have granted relief.").
[19] Presentence Investigation Report ¶ 392.
[20] *Id.* ¶¶ 397–401.
[21] *Id.* ¶ 406.
[22] U.S. SENTENCING COMMISSION, RECIDIVISM OF FEDERAL VIOLENT OFFENDERS RELEASED IN 2010, 31 (2022).

- 4 -

Case No. 4:11-cr-00501
GWIN, J.

*Sentencing Disparities.*  Taylor first argues that disparities between Taylor's sentence and Taylor's codefendants' sentences present extraordinary-and-compelling reasons to shorten Taylor's incarceration.  But as explained above, the Court considered disparities between the codefendants at sentencing.  Because circumstances the Court accounted for at sentencing are not extraordinary-and-compelling reasons for early release,[23] this argument fails.

*Family Circumstances.*  Taylor next says that Taylor's minor children's mother cannot adequately care for Taylor's children.  The incapacitation of a minor child's caretaker when an inmate would be the sole available caretaker can be an extraordinary-and-compelling reason for early release.  But courts generally require proof that an inmate, if released, would be the only available caregiver.[24]

Taylor gives no evidence either that his children's mother has become incapacitated or that Taylor would be the sole available caregiver if released.  To the contrary, Taylor admits that the children's mother has sole custody, and that Taylor would have to petition a state court for any custody rights.  So, Taylor's sole-caregiver argument also fails.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** Taylor's compassionate-release motion.

IT IS SO ORDERED.

Dated: March 14, 2023                           *s/      James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[23] *See* United States v. Lemons, 15 F.4th 747, 750 (6th Cir. 2021).
[24] *See* United States v. Vela-Salinas, 3:11-CR-00083-19, 2022 WL 391490, at *4 (M.D. Tenn. Feb. 8, 2022) (quoting United States v. Gibson, 11-20551, 2021 WL 2549682 (E.D. Mich. June 22, 2021)).

- 5 -