# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 4:11-cr-501-1 |
| ) | |
| PLAINTIFF, ) | CHIEF JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| ISIAH TAYLOR, III, ) | |
| ) | |
| DEFENDANT. ) | |

On April 17, 2012, defendant Isiah Taylor, III ("Taylor") was sentenced to a custody term of 210 months, following a jury trial in which he was convicted of one count of conspiracy to commit Hobbs Act robbery and three counts of substantive Hobbs Act robbery and aiding and abetting Hobbs Act robbery, all in violation of 18 U.S.C. § 1951(a); and one count of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. No. 70 (Judgment).[1]) Taylor is serving his sentence at Gilmer FCI and has an anticipated release date of October 1, 2026. (*See* https://www.bop.gov/inmateloc/, last visited 12/20/2024.)

Taylor now seeks a compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 173 (Compassionate Release Motion).) Appointed counsel filed a supplement in support of the motion. (Doc. No. 179 (Supplement).) Plaintiff United States of America (the "government") filed an

---

[1] Specifically, Taylor received a custody sentence of 126 months for the four Hobbs Act convictions to be served concurrently with each other but consecutive to a custody sentence of 84 months for the weapons offense, for an aggregate sentence of 210 months. (*See id.*)

opposition to the motion (Doc. No. 183 (Response)), and appointed counsel has filed a reply. (Doc. No. 185 (Reply).) For the reasons that follow, Taylor's motion for a compassionate release is denied.[2]

I.  BACKGROUND

Between September 11, 2006 and April 1, 2009, Taylor and others participated in a conspiracy to commit a total of 45 armed robberies of various individuals and establishments within the jurisdiction of the Northern District of Ohio. (*See also* Final Presentence Investigation Report ("PSR") ¶¶ 10–64.) To facilitate the robberies and attempted robberies, Taylor or a co-conspirator employed and/or threatened force and violence, and brandished weapons. (*Id*. ¶¶ 2, 10–64.) On several occasions, the assailants tied up and/or pepper sprayed the victims (*see, e.g. id*. ¶¶ 12, 26–27, 30, 50), and, on one occasion, an assailant hit a victim with a car when the victim attempted to flee the scene on foot. (*Id*. ¶ 33.) At the time of his arrest, Taylor was on post-release control. (*Id*. ¶ 389.)

Taylor took a direct appeal from the judgment of the district court. (Doc. No. 71 (Notice of Appeal).) On March 19, 2013, the Sixth Circuit issued a decision affirming the district court's judgment. (Doc. No. 94 (*USA v. Taylor, III*, No. 12-3443 (6th Cir. Mar. 19, 2013) (unreported)).) Taylor also unsuccessfully sought collateral relief from his judgment via motions to vacate (and related motions for reconsideration) (Doc. Nos. 107, 123, 125, 153; *see* Doc. No. 111, 112, 124, 126, 155), as well as motions for a judgment of acquittal and/or a new trial. (Doc. Nos. 64, 142;

---

[2] In light of the Court's ruling on the present motion for compassionate release, as supplemented, Taylor's *pro se* motion styled "motion for a status of pending case" (Doc. No. 174) and motion for an extension of time to supplement (Doc. No. 176) are denied as moot.

*see* Doc. Nos. 106, 147.)[3] Beginning in March 2020, Taylor filed a series of compassionate release motions (and related motions for reconsideration), in which he sought early release due to the conditions surrounding the COVID-19 pandemic, discrepancies between his sentence and that of his co-conspirators, and concerns regarding his children.[4] (Doc. Nos. 133, 157, 161; *see* Doc. Nos. 140, 160, 168.)

On March 14, 2023, United States District Judge James S. Gwin,[5] the jurist who presided over Taylor's jury trial and sentencing hearing, denied Taylor's second motion for compassionate release. (Doc. No. 160 (Order).) In support of early release, Taylor raised, among other concerns, his assessment that his minor children's mother was unable to adequately care for Taylor's children. The Court found that Taylor had failed to establish the existence of extraordinary and compelling reasons for release. In particular, the Court found Taylor had failed to establish that his children's mother was incapacitated. (Doc. No. 160, at 5.) Nevertheless, the Court also considered the 18 U.S.C. § 3553(a) sentencing factors and found "they weigh[ed] heavily against shortening Taylor's prisoner term." (*Id.* at 2.) With respect to the seriousness of the Hobbs Act robbery conspiracy, the Court observed:

> *Offense's Nature & Circumstances*. Taylor's serious offense counsels against any

---

[3] Taylor also filed a motion to reduce his sentence under Amendment 821 to the United States Sentencing Guidelines relating to the treatment of "status points." (Doc. No. 169.) In an order dated April 30, 2024, Taylor's motion was denied because application of the amendment did not result in a lower amended advisory guideline range and because the district court had determined Taylor to be a career offender. (Doc. No. 172, at 2 (All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system).)

[4] In an order dated March 13, 2023, resolving Taylor's second motion for compassionate release, Judge Gwin explained that the Court, at sentencing, "considered Taylor's codefendants' sentences to ensure that Taylor's sentence proportionately reflected Taylor's greater culpability as the conspiracy's leader. The Court ultimately imposed a 126-month sentence—a 65% downward variance from the guidelines range. So, no unwarranted disparity supports Taylor's early release." (Doc. No. 160, at 3.)

[5] On September 24, 2024, pursuant to General Order 2024-19, the matter was randomly reassigned to the docket of the undersigned.

3

> early release. Taylor played [a] leadership role in an armed-robbery conspiracy. The conspiracy terrorized Northeast Ohio businesses for three years, committing 45 total robberies.
>
> Taylor and his coconspirators used sophisticated methods to rob without being identified or captured. At Taylor's instruction, one of the coconspirators would steal a vehicle or bicycle to use during the robbery and then abandon the vehicle after completing the crime. Taylor also provided his coconspirators with two-way radios, police scanners, ski masks, gloves, and dark clothing.
>
> The robberies typically involved brandishing a firearm or simulated firearm and threatening to shoot the victims. Sometimes, assailants used physical force by grabbing or striking the victims. During several robberies, assailants tied up or pepper-sprayed the victims.
>
> Trial testimony showed that the robberies profoundly impacted victims. One victim testified that during a robbery she felt "scared" and "wonder[ed] what the last thing [she said] to [her] kids was." Other victims described similar experiences. And post-trial victim-impact statements further showed that victims suffered "emotional and mental problems, paranoia, and physical injuries" resulting from the robberies.

(*Id*. at 2–3 (footnotes with record cites omitted).) On December 4, 2023, Judge Gwin revisited his ruling when he denied Taylor's motion for reconsideration. Once again, the Court found that Taylor had failed to demonstrate the existence of an extraordinary and compelling reason, and that, in any event, the sentencing factors set forth at 18 U.S.C. § 3553(a) did not support a sentence reduction. (Doc. No. 168, at 3.) As to the latter, Judge Gwin found (once again) that the instant offenses were "serious and violent." (*Id*.)

On May 9, 2024, Taylor filed what is essentially his third motion for compassionate release. In his current motion, as supplemented, Taylor maintains that the mother of several of his minor children has exposed them to physical and sexual abuse and neglect. (Doc. No. 173, at 2–7.) Appointed counsel has obtained court records demonstrating that the children's mother has been arrested on charges of felony child endangerment and felonious assault. (Doc. No. 179, at 4; *see*

4

Doc. No. 179-1 (Juvenile Court Records), at 6; *see also* Doc. No. 185, at 2.[6]) Additional documentation obtained by counsel shows that two of Taylor's minor children have been removed from the mother's custody and are now the subject of a dependency case before the Mahoning Count Court of Common Pleas Juvenile Division. (Doc. No. 179-1, at 6–8.) He argues that, in light of these developing events, the need to care for his children qualifies as an extraordinary and compelling reason warranting early release. (Doc. No. 179, at 5–6.)

## II. LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Taylor does not seek relief under Rule 35, nor does he claim that he was sentenced to a

---

[6] In the reply, Taylor supplies a link to the criminal docket for the mother's case, which reflects that the mother's trial is scheduled for February 27, 2025. (*Id.* at 2 n.1.)

term of imprisonment based on a sentencing range that was subsequently lowered. Instead, he claims, for the third time, that he is entitled to a compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. §1B1.13, was recently amended (effective November 1, 2023) and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." §1B1.13(b).

The Court finds Taylor has exhausted his administrative remedies. The Court, therefore, turns to a consideration of whether Taylor has demonstrated the existence of extraordinary and compelling reasons identified in 18 U.S.C. § 3582(c)(1)(A)(i), and discussed in detail in U.S.S.G. §1B1.13(b), as amended. Invoking the third category of the governing policy statement—a

defendant's family circumstances—Taylor maintains that he must be released so that he can serve as caretaker for his minor children. Under §1B1.13(b)(3), as amended, a prisoner establishes an extraordinary and compelling reason for a sentence reduction if he can prove any of the following:

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner *when the defendant would be the only available caregiver for the spouse or registered partner*.

(C) The incapacitation of the defendant's parent *when the defendant would be the only available caregiver for the parent*.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, *when the defendant would be the only available caregiver for such family member or individual*. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grand parent, or sibling of the defendant.

U.S.S.G. §1B1.13(b)(3) (emphasis added).

Taylor's request is grounded in §1B1.13(b)(3)(A)[7]—death or incapacitation of the caretaker of the defendant's minor children—to claim an extraordinary and compelling reason for release. He argues that the juvenile court and police records he has produced demonstrate that two of Taylor's minor children have been removed from their mother's care because of abuse and are

---

[7] The government erroneously states that Taylor is relying on §1B1.13(b)(3)(B), which relates to the incapacitation of a spouse or registered partner. (*See* Doc. No. 183, at 8 (citing §1B1.13(b)(3)(B)).) In his reply, Taylor suggests he is seeking relief under §1B1.13(b)(3)(D) (*see* Doc. No. 185, at 1), but that subsection relates to relationships that are similar in kind to those relationships specifically referenced in §1B1.13(b)(3)(A)–(C). Because Taylor is the parent of his minor children, §1B1.13(b)(3)(A) applies.

7

now in the custody of the Department of Children Services.[8] (Doc. No. 179, at 6.) He argues that his children's mother is, therefore, incapacitated under the policy statement.

The government concedes that Taylor's allegations and documentation demonstrate that the children's mother is unable, and, indeed, not permitted, to care for Taylor's minor children at this time. (Doc. No. 183, at 9.) Nevertheless, it is the government's position that Taylor has not established the existence of an extraordinary and compelling reason under the relevant policy statement because he has not demonstrated that he is the only available caregiver for his minor children. (*Id.*)

"Prior to November 2023, when addressing motions for compassionate release based on similar circumstances [involving the death or incapacitation of the caregiver for the prisoner's minor child], most courts considered whether there were alternate caregivers." *United States v. Parham*, No. 13-cr-151, 2024 WL 4753375, at *10 (D. Md. Nov. 12, 2024) (collecting cases). Courts also placed the burden on the defendant to establish the absence of available caregivers. *Id.* (collecting cases). As noted, §1B1.13(b)(3) was amended in November 2023. While the subsections relating to the incapacitation of a spouse (§1B1.13(b)(3)(B)), parent (§ 1B1.13(b)(3)(C)), or similar-situated family member (§1B1.13(b)(3)(D)), all require the defendant to establish that there is no available caregiver, §1B1.13(b)(3)(A)—addressing the death or incapacitation of the caregiver for a defendant's minor child—does not. Section 1B1.13(b)(3) is not ambiguous, and the drafters clearly knew how to write such a limiting requirement into a subsection. The Court must construe the words of the policy statement in accordance with their

---

[8] These same records demonstrate that the children were temporarily placed in the custody of their maternal grandfather, but they were eventually removed from his care because he tested positive for narcotics. (Doc. No. 179, at 5–6 (citing Doc. No. 179-1).)

ordinary meaning, and it is difficult to ignore the conspicuous absence of any requirement that a defendant prove that there are no alternative caregivers for his minor child.

The Court is unaware of any Sixth Circuit case that has addressed this issue in light of the amended language of the policy statement. "But, several . . . courts have recognized that, as to the death [or incapacitation] of the caregiver of the defendant's minor child, the defendant need not establish that he is the only available caregiver." *Parham*, 2024 WL 4753375, at *11 (collecting cases); *United States v. Smith*, No. 2:21-cr-279, 2024 WL 4556521, at *4 (D. Nev. Oct. 22, 2024) (collecting cases). Nevertheless, some district courts, including a court in the Northern District of Ohio, have continued to require proof that defendant is the only available caregiver. *See, e.g., United States v. Al Hunaity*, No. 18-cr-723, 2024 WL 982044, at *7 (D. N.J. Mar. 7, 2024) ("In addition to proving her former husband's incapacitation, however, Defendant must also show that [her former husband] is currently the sole available caregiver for her minor children." (citation omitted)); *United States v. Foster*, No. 5:18-cr-472, 2024 WL 3715442, at *4 (N.D. Ohio Aug. 8, 2024) ("Moving to the second prong, Foster must prove that he would be the only available and suitable caregiver for his son.").

The government also argues that, even if Taylor had met his burden with respect to the availability of other caregivers, he has failed to demonstrate that *he* is an available and suitable caregiver for his children. (Doc. No. 183, at 10.) As the government correctly observes, Taylor concedes that he does not have custodial rights to his minor children and would have to apply for custody upon his release. (Doc. No. 179, at 6.) Given Taylor's violent criminal history, and his absence from his children for much of their lives due to periods of incarceration, it would seem

9

unlikely that a state court would award him custody.[9] *See, e.g., Foster*, 2024 WL 3715442, at *4 (finding it "speculative" that a state court would grant defendant custody of his minor child "due to [the defendant's] prior record of serious felony convictions, mental health challenges, and drug abuse").

But the Court need not wade into the debate of whether a defendant must still prove the unavailability of other caregivers, following the amendment to U.S.S.G. § 1B1.13(b)(3), because even if Taylor had cleared this initial hurdle, a reduction of the prison term would not be appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a).[10] *See United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a) and directing district courts to consider all relevant statutory factors). Other than the passage of time, little has changed to alter the Court's analysis since Judge Gwin last visited the § 3553(a) sentencing factors in 2023. The nature and circumstances of the underlying armed robberies remain serious. Taylor also has a disturbing criminal history that includes adult convictions for voluntary manslaughter, conspiracy to commit robbery and substantive robbery, and aggravated assault, qualifying Taylor for career offender status under the Sentencing Guidelines. (*See* PSR ¶¶ 386–87, 390.) None of the past sanctions, including significant terms of imprisonment, have caused Taylor to refrain from engaging in dangerous criminal activity. The fact that he was on community control in state court when he engaged in the string of armed robberies that led to the present convictions only serves to

---

[9] In his reply, Taylor takes issue with the government's observation that he would need to seek custody upon release, noting that he cannot yet move for custody for the simple reason that he is still in prison. (Doc. No. 185, at 4.) True as that may be, the likelihood of Taylor prevailing on a custody petition upon his release is speculative and remote.

[10] There is also debate amongst jurists as to whether a caregiver is incapacitated due to the fact that a child has been placed in foster care. *See, e.g., Foster*, 2024 WL 3715442, at *3 (noting split of authority and collecting cases). For the Court's purposes, the uncertainty in the law is merely academic, as the Court finds that Taylor does not otherwise qualify for a sentence reduction.

fortify the Court's belief that Taylor remains unwilling to conform his behavior and would be unlikely to abide by any terms of early release.

The Court has considered Taylor's prison programming, his accomplishments as an author, his incident-free prison disciplinary record (*see* Doc. No. 185, at 5), and his concern for his children. But after considering all the factors, the Court determines (consistent with prior determinations by Judge Gwin) that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court also finds that Taylor poses a danger to the community.[11]

### III. CONCLUSION

For the foregoing reasons, the Court denies Taylor's third motion, as supplemented, for a compassionate release.[12]

**IT IS SO ORDERED**.

Dated: January 2, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[11] Given Taylor's violent past, the Court further believes that Taylor will require the maximum period of time in a residential reentry center (RRC) to prepare him to attempt to successfully transition back into the community.

[12] To the extent Taylor attempts to assert due process violations against the BOP and employees of Gilmer FCI for allegedly failing to follow BOP policies (*see* Doc. No. 173, at 7–8), such complaints may not be addressed in a compassionate release motion but must be brought in a habeas proceeding or in a separate civil action under 42 U.S.C. § 1983.