# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:11-cr-501 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| ISIAH TAYLOR, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Isiah Taylor ("Taylor") for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 189 (Motion).) This is Taylor's fourth request for compassionate release. Plaintiff United States of America (the "government") filed an opposition to the motion. (Doc. No. 190 (Response).) For the reasons set forth herein, the motion is DENIED.

## I. BACKGROUND

Between September 11, 2006 and April 1, 2009, Taylor and others participated in a conspiracy to commit a total of 45 armed robberies of various individuals and establishments within the jurisdiction of the Northern District of Ohio. (*See also* Final Presentence Investigation Report ("PSR") ¶¶ 10–64.) To facilitate the robberies and attempted robberies, Taylor or a co-conspirator employed and/or threatened force and violence, and brandished weapons. (*Id*. ¶¶ 2, 10–64.) On several occasions, the assailants tied up and/or pepper sprayed the victims (*see, e.g., id*. ¶¶ 12, 26–27, 30, 50), and, on one occasion, an assailant hit a victim with a car when the victim

attempted to flee the scene on foot. (*Id.* ¶ 33.) Taylor was on state post-release control when he committed each of the robberies and attempted robberies. (*Id.* ¶¶ 387, 389.)

On April 17, 2012, Taylor was sentenced to a custody term of 210 months, following a jury trial in which he was convicted of one count of conspiracy to commit Hobbs Act robbery and three counts of substantive Hobbs Act robbery and aiding and abetting Hobbs Act robbery, all in violation of 18 U.S.C. § 1951(a); and one count of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. No. 70 (Judgment).) Taylor is serving his sentence at Gilmer FCI and has an anticipated release date of October 1, 2026. (*See* https://www.bop.gov/inmateloc/, last visited 4/15/2025.)

Beginning in March 2020, Taylor filed a series of compassionate release motions (and related motions for reconsideration), in which he sought early release due to the conditions surrounding the COVID-19 pandemic, discrepancies between his sentence and that of his co-conspirators, and concerns regarding his children.[1] (Doc. Nos. 133, 157, 161; *see* Doc. Nos. 140, 160, 168.) In his third request for compassionate release, filed in 2024, Taylor raised concerns that the mother of his two minor children was unfit to serve as their caregiver. (*See* Doc. No. 173 (Third Motion for Compassionate Release), at 2–7.) Subsequent juvenile court records acquired by

---

[1] In an order dated March 13, 2023, resolving Taylor's second motion for compassionate release, United States District Judge James S. Gwin explained that the Court, at sentencing, "considered Taylor's codefendants' sentences to ensure that Taylor's sentence proportionately reflected Taylor's greater culpability as the conspiracy's leader. The Court ultimately imposed a 126-month sentence [for Taylor's Hobbs Act convictions]—a 65% downward variance from the guidelines range. So, no unwarranted disparity supports Taylor's early release." (Doc. No. 160, at 3 (All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.).) Judge Gwin presided over Taylor's trial and sentencing, and addressed Taylor's numerous post-judgment motions and appeals, including his first two compassionate release motions. On September 24, 2024, pursuant to General Order 2024-19, the matter was randomly reassigned to the docket of the undersigned.

appointed counsel demonstrated that the children had been removed from the mother's custody and placed in foster care. (Doc. No. 179-1 (Juvenile Court Records), at 6–8.)

On January 2, 2025, the Court issued a decision denying Taylor's third request for compassionate release. As the initial matter, the Court found that Taylor had failed to demonstrate the existence of extraordinary and compelling reasons to justify early release. The Court acknowledged that Taylor's allegations and submissions demonstrated that the mother of his minor children was unfit to serve as caregiver. Nevertheless, the Court also found that Taylor had not demonstrated that *he* was "an available and suitable caregiver for his children." (Doc. No. 186 (Memorandum Opinion and Order), at 9.) Taylor conceded that he did not have custody of his children, and with his violent criminal history and absence from his children for much of their lives due to periods of incarceration, the Court found that the likelihood of Taylor prevailing on a custody petition was speculative and remote. (*Id.* at 9–10 n.9 (citing *United States v. Foster*, No. 5:18-cr-472, 2024 WL 3715442, at *4 (N.D. Ohio Aug. 8, 2024)).)

The Court also went on to find that, even if Taylor had cleared the initial hurdle of demonstrating extraordinary and compelling reasons, "a reduction of the prison term would not be appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a)." (*Id.* at 10.) In particular, the Court found that the armed robberies for which Taylor was convicted were serious, and that when considered along side his violent and lengthy criminal history and his parole violations, the sentencing factors did not support early release. (*Id.* at 10–11.)

In the present motion, Taylor again expresses concern for his minor children. He notes that one of two sons has been experiencing "behavior problems" since his placement in foster care. (Doc. No. 189, at 1.) Taylor also worries that one of his "most 'unstable' [adult] daughters" has

3

requested custody of the boys, and he suggests that placement with this daughter would be "problematic and unsafe" for his sons. (*Id*. at 2.) He appends to his motion a letter from the Mahoning County Children Services detailing some of his son's behavioral issues. (Doc. No. 189-1 (Letter), at 1.) The correspondence further advises Taylor that, if his own "reunification" with his minor children is not possible, and a suitable caregiver for the children is not located, the county could file for "permanent custody with the power of adoption."(*Id.*)[2]

## II. LAW AND DISCUSSION

The Court set forth in its prior decision the standard used to evaluate motions for compassionate release under 18 U.S.C. § 3582 and the recently amended policy statement found at U.S.S.G. § 1B1.13. (*See* Doc. No. 186, at 5–7.) For purposes of setting the stage for the present motion, it is sufficient to note that, under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

---

[2] Additionally, Taylor appends to his motion copies of emails from 2024 that he exchanged with his son that discuss some of his son's emotional struggles. (Doc. No. 189-2 (Emails), at 1.)

As the government correctly observes, Taylor has not demonstrated that he has exhausted his administrative remedies before filing this most recent compassionate release motion. (Doc. No. 190, at 8.) As noted, exhaustion of administrative remedies is a claims-processing rule that is mandatory if the government invokes it, which it has here. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted); *see, e.g., United States v. Michl*, 1:21-cr-21-2, 2024 WL 3675819, at *3 (N.D. Ohio Aug. 6, 2024) ("As the party seeking a compassionate release, it is [defendant's] burden to show that he is entitled to relief, including that he has properly exhausted his administrative remedies." (citation omitted)). Accordingly, on this basis alone, Taylor's latest request for a compassionate release is properly denied.

And even if the Court could excuse Taylor's failure to exhaust (which it cannot), it would find that Taylor has not demonstrated the existence of extraordinary and compelling reasons that would warrant early release.[3] Taylor still has not shown that *he* would be a suitable and available caregiver for his minor children if he were released. Taylor concedes once again that, upon his release, he would need to petition a juvenile court for custody of his sons. (Doc. No. 189, at 2.) While Taylor urges this Court to refrain from predicting how a juvenile court might view his petition (*see id*.), the fact remains that Taylor's violent criminal history and his absence from his children's lives because of lengthy periods of incarceration render his chances of being awarded custody remote. *See, e.g., United States v. Garrett*, No. 5:23-cr-37, 2025 WL 905793, at *2 (E.D.

---

[3] The termination of a defendant's parental rights is not one of the enumerated bases for finding an extraordinary and compelling reason under the revised version of § 1B1.13. Nevertheless, the Court acknowledges a pre-revision split in authority on the subject. *See United States v. Pearson*, No. 16-cr-20601, 2022 WL 8090111, at *2 (E.D. Mich. Oct. 14, 2022) ("Courts are divided as to whether the termination of a defendant's parental rights constitutes an extraordinary and compelling circumstance" (collecting cases)). This pre-amendment conflict in the law does not impact the Court's analysis because, even if such a loss constituted an extraordinary and compelling reason, the § 3553(a) sentencing factors do not support early release.

Ky. Mar. 25, 2025) (finding daughter's placement in foster care did not constitute an extraordinary and compelling reason, in part, because "[c]onsidering [defendant's] past and recent criminal history, the undersigned has serious doubts that child protective services would place the child in his care, should [defendant] be released early. And it would be seriously misguided if it were to do so."); *Foster*, 2024 WL 3715442, at *4 ("Considering Foster's long-standing criminal history, the fact that Foster has spent the past five years in prison and away from his son, and that he has not been in regular contact with his son—at this juncture, the Court finds that Foster's intention of becoming the potential caretaker of his son is merely theoretical." (quotation marks and citation omitted)); *see also United States v. Caldwell*, No. 2:18-cr-248, 2022 WL 3151892, at *3 (S.D. Ohio Aug. 8, 2022) (finding that placement of child in foster care was not an extraordinary and compelling reason, and noting that, even if it was, "it remains unclear to this Court whether [defendant] would be legally or logistically able to regain custody of his son").

But even if Taylor had exhausted his administrative remedies and demonstrated the existence of an extraordinary and compelling reason, the § 3553(a) factors continue to weigh against early release. The Court reviewed these factors as recently as January of this year (2025), and its reasoning then still applies. There, the Court held:

> The nature and circumstances of the underlying armed robberies remain serious. Taylor also has a disturbing criminal history that includes adult convictions for voluntary manslaughter, conspiracy to commit robbery and substantive robbery, and aggravated assault, qualifying Taylor for career offender status under the Sentencing Guidelines. (*See* PSR ¶¶ 386–87, 390.) None of the past sanctions, including significant terms of imprisonment, have caused Taylor to refrain from engaging in dangerous criminal activity. The fact that he was on community control in state court when he engaged in the string of armed robberies that led to the present convictions only serves to fortify the Court's belief that Taylor remains unwilling to conform his behavior and would be unlikely to abide by any terms of early release.

> The Court has considered Taylor's prison programming, his accomplishments as an author, his incident-free prison disciplinary record (*see* Doc. No. 185, at 5), and his concern for his children. But after considering all the factors, the Court determines (consistent with prior determinations by Judge Gwin) that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court finds that Taylor poses a danger to the community.[4]

(Doc. No. 186, at 10–11.[5]) There is nothing about the present motion that alters the Court's prior evaluation of the § 3553(a) factors.

The Court is sympathetic to Taylor's concern for his children. "The care of minor children while a parent is incarcerated is a problem faced by many convicted defendants." *See United States v. Kibby*, No. 2:19-cr-179, 2021 WL 2009568, at *3 (S.D. Ohio May 20, 2021). Unfortunately, Taylor's present family circumstances are largely the result of his own dangerous and illegal behavior, and, as the Court has now determined on multiple occasions, these circumstances do not warrant early release. *See United States v. Lawrence*, 609 F. Supp. 3d 544, 550 (E.D. Mich. 2022) (noting that defendant's violation of the terms of his supervision is the reason his children are growing up without a father). Taylor is cautioned that any further compassionate release motions that do not demonstrate a significant change in his circumstances will be summarily denied.

---

[4] Taylor was also convicted of reckless endangerment, terroristic threats, and unlawful restraint. (PSR ¶ 387.)

[5] The Court also remains convinced that, "[g]iven Taylor's violent past, . . . Taylor will require the maximum period of time in a residential reentry center (RRC) to prepare him to attempt to successfully transition back into the community." (Doc. No. 186, at 11 n.11.)

7

### III. CONCLUSION

For the foregoing reasons, the Court denies Taylor's motion (Doc. No. 189) for a compassionate release.

**IT IS SO ORDERED**.

Dated: April 16, 2025

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**